# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

SEMANTIC SEARCH TECHNOLOGIES
LLC,
      Plaintiff,

v.

YAHOO! INC., *et al.*,
      Defendants.

**CASE NO. 6:17-cv-00169-RWS**
**JURY TRIAL DEMANDED**

## DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12(B)(6) MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     THE CLAIMS OF THE PATENTS-IN-SUIT ARE PATENT INELIGIBLE .........2

     A.    *Alice* Step 1 - The Claims Are Directed to an Abstract Idea ..........................2

     B.    *Alice* Step 2 - The Claims Do Not Recite an Inventive Concept ....................4

     C.    Preemption...................................................................................................10

     D.    Post-*Alice* Issuance....................................................................................11

     E.    The Dependent Claims Do Not Add Any Limitations That
          Transform The Claims Into Patent-Eligible Claims.....................................11

     F.    Claim Construction Is Not Necessary ..........................................................13

III.    PLAINTIFF'S IMPROPER, ADDITIONAL EVIDENCE
      DOES NOTHING TO SAVE THE PATENTS-IN-SUIT .........................................13

     A.    Prior Art Sought To Be Added By Plaintiff ...................................................13

     B.    The *Aldo* Defendants' Claim Construction Positions ...................................14

     C.    Mr. Bridgeman's Declaration ........................................................................15

     D.    U.S. Patent No. 9,639,878 .............................................................................15

IV.    CONCLUSION...................................................................................................16

**Cases**                                                          **Page(s)**

*Affinity Labs of Texas, LLC v. DIRECTTV, LLC*,
   838 F.3d 1253 (Fed. Cir. Sept. 23, 2016) ............................................................... 2

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.*,
   134 S. Ct. 2347 (2014) ................................................................................... passim

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016) ........................................................................... 9

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
   788 F.3d 1371 (Fed. Cir. 2015) ......................................................................... 10

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*,
   687 F.3d 1266 (Fed. Cir. 2012) ........................................................................... 8

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ............................................................................................ 4

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ........................................................................... 3

*Dow Jones & Co. v. Ablaise Ltd.*,
   606 F.3d 1338 (Fed. Cir. 2010) ......................................................................... 12

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ......................................................................... 10

*Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*,
   128 F. Supp. 3d 103 (D.D.C. 2015) ................................................................... 13

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016) ........................................................................... 4

*Improved Search LLC v. AOL Inc*
   170 F. Supp. 3d 683 (D. Del. 2016) ................................................................... 9

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015) ......................................................................... 13

*MacroPoint, LLC v. FourKites, Inc.*,
   No. 1:15 CV 1002, 2015 WL 6870118 (N.D. Ohio Nov. 6, 2015) ....................... 11

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016)........................................................................ 4

*Medrad, Inc. v. MRI Devices Corp.*,
    401 F.3d 1313 (Fed. Cir. 2005)...................................................................... 11

*Motio, Inc. v. BSP Software LLC*
    154 F. Supp. 3d 434 (E.D. Tex. 2016) ............................................................ 8

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015)........................................................................ 7

*Planet Bingo, LLC v. VKGS LLC*,
    576 F. App'x 1005 (Fed. Cir. 2014) ................................................................ 5

*Rmail Limited v. Amazon.com, Inc.*,
    No. 2:10-cv-258-JRG, Dkt. No. 264, at 4 (E.D. Tex. Feb. 8, 2013)...................... 14

*Rothschild Location Techs. LLC v. Geotab USA, Inc.*,
    No. 6:15-CV-682-RWS-JDL, 2016 WL 3584195 (E.D. Tex. Jan. 4, 2016) .......... 7

*Semantic Search Techs., LLC v. Aldo U.S., Inc.*,
    Case No. 6:16-cv-1058, Dkt. No. 128 at 1 (E.D. Tex. Sept. 13, 2017) ................ 2

*Tele-Publishing, Inc. v. Facebook, Inc.*,
    No. 09-11686-DPW, 2017 WL 1959218 (D. Mass. May 11, 2017)...................... 12

*Thales Visionix Inc. v. United States*,
    850 F.3d 1343 (Fed. Cir. 2017)........................................................................ 9

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
    675 F. App'x 1001 (Fed. Cir. 2017) ................................................................ 8

*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*,
    635 F. App'x 914 (Fed. Cir. 2015) ................................................................ 10

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017)........................................................................ 8

*Voxathon LLC v. Alpine Elecs. Of Am., Inc.*,
    No. 2:15-cv-562-JRG, 2016 WL 260350, at * 4 (E.D. Tex. Jan. 21, 2016) .......... 4

**Statutes**

§ 101 ................................................................................................................ passim

Defendants Yahoo! Inc.[1] and SportsGiant LLC d/b/a HockeyGiant.com ("SportsGiant"), (together, "Defendants") file this reply in support of their respective motions to dismiss[2] (Dkt. Nos. 52, 55) and state as follows:

## I.      INTRODUCTION

The patents-in-suit claim nothing more than confirming an interpretation of someone's question, which is an abstract idea. To provide relevant answers, it helps to understand what is being asked. Because natural language is inherently ambiguous, a query often has more than one plausible interpretation. Only the person who asked the question knows for certain what he meant to ask about. Thus, to ensure that only relevant answers are provided, one must learn, from the inquirer, which of the alternative, plausible interpretations of his query he intended to convey. In other words, it is necessary to have the inquirer confirm a mapping of his query terms to particular concepts, to the exclusion of others. When one of multiple mappings has been confirmed, alternative interpretations can safely be ruled out, reducing the search space to only relevant answers. As a result, irrelevant answers or "false hits" will not be presented to the inquirer.

The parties agree that the Asserted Claims[3] of the patents-in-suit are directed to confirming an interpretation of a query, as reflected in a mapping of query terms to item attributes. Confirming one's interpretation of a query with the only person who could know for certain what it means (*i.e.*,

---

[1] Effective June 13, 2017, Verizon Communications, Inc. ("Verizon") acquired the operating assets of Yahoo! Inc. Yahoo! Inc. first transferred its operating assets, as well as all liabilities relevant to the subject matter of this case, to a subsidiary named Yahoo Holdings, Inc., then transferred Yahoo Holdings, Inc. to Verizon. Yahoo! Inc. no longer owns any interest in the past, present, or future liabilities relevant to this lawsuit. As such, Yahoo! Inc. and Yahoo Holdings, Inc. (together, "Yahoo") filed their motion to substitute parties on September 26, 2017. *See* Dkt. No. 53.

[2] In Yahoo's Motion to Dismiss (Dkt. No. 52), it also asserts that this lawsuit should be dismissed for improper venue under Rule 12(b)(3). That claim is currently stayed (*See* Dkt. No. 64) and Yahoo reserves all rights and defenses associated with its improper venue defense.

[3] The Asserted Claims against both Yahoo and SportsGiant are: Claim 10 of U.S. Patent No. 8,793,237 (the "'237 patent"), Claims 1, 5, 7, 8 and 10 of U.S. Patent No. 8,880,497 (the "'497 patent), and Claims 1, 5, 7, 8 and 10 of U.S. Patent No. 9,069,860 (the "'860 patent"). Semantic also asserts Claims 1, 5, 7, 8 and 9 of U.S. Patent No. 9,378,521 (the "'521 patent") against SportsGiant only. *See* Dkt. No. 66 at 4.

the inquirer) is an abstract idea. Moreover, the claimed means for obtaining confirmation is simply to ask the inquirer whether he meant one category of things or another. This approach is not even arguable inventive. As such, rather than being directed to an inventive solution to a technical problem, the claims of the patents-in-suit broadly preempt using a computer to ask an inquirer to confirm one interpretation of his query over others. All of the claims are substantially similar and are directed to this same abstract idea, as evidenced by the patents' terminal disclaimers and Plaintiff's own use of representative claim 10 of the '237 patent in its Response. *See* Dkt. No. 66.

In a thinly-veiled attempt to unilaterally and arbitrarily convert Defendants' Rule 12(b)(6) Motions to Dismiss into Rule 56 summary judgment motions, and get a second bite of the apple should its motion to "supplement the record with evidentiary material that…the patents-in-suit are subject matter eligible" fail in the nearly identical case of *Semantic Search Techs., LLC v. Aldo U.S., Inc.*, Case No. 6:16-cv-1058, Dkt. No. 128 at 1 (E.D. Tex. Sept. 13, 2017), Plaintiff seeks to improperly introduce evidence outside the pleadings. However, as Plaintiff itself admits "evidence outside the pleadings is not considered on a Rule 12(b)(6) motion." Response at 10. Plaintiff cannot unilaterally introduce "evidence" purportedly relating to Defendants' Rule 12(b)(6) Motions, and the Court should refuse to consider such evidence.

## II.     THE CLAIMS OF THE PATENTS-IN-SUIT ARE PATENT INELIGIBLE

### A.     *Alice* Step 1 - The Claims Are Directed to an Abstract Idea

Step 1 of the § 101 analysis requires the Court to consider the "focus of the claimed advance over the prior art" and determine if that focus is directed to excluded subject matter (*e.g.*, an abstract idea). *Affinity Labs of Texas, LLC v. DIRECTTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. Sept. 23, 2016). To that end, methods that may be performed in the human mind, or by a person using pen and paper, are not patent eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366,

1372 (Fed. Cir. 2011).  As explained in Defendants Motions to Dismiss, the claimed methods are routinely and readily performed in the human mind.

And, contrary to Plaintiff's assertions, fielding search requests is not new or unique to computers of the Internet.  Librarians were helping people find information, and salesmen were helping people find products, long before computers did.  Because certain words can have several meanings, a challenge in responding to queries—for both humans and computers alike—is understanding what the inquirer means.  That is, to what concepts do the inquirer's words refer?  Is the inquirer asking about "apple," the type of fruit, or "Apple," the computer manufacturer?  Thus, alternative interpretations of a query are reflected in different mappings of query terms to item attributes. The parties agree that the focus and alleged improvement of the patents-in-suit rests in confirming that the terms of a user's query are mapped to appropriate item attributes:

> The asserted claims of the patents-in-suit [purport to] describe various solutions to the previously-existing problems with computer searches, each through a defined sequence of method steps, such that implementation of the specific steps results in achieving a desired result.… A mapping **between the human-specified values/characteristics and the correct corresponding attribute is required...** 'Thus, **what is desired is a method and apparatus to confirm the mapping…**'

Response at 17-18 (quoting '237 patent at 2:15-21) (emphasis added).  Confirming a mapping between the query terms and item attributes allows a person to ensure that he understands the query, and thus, responds appropriately.  (It serves the same purpose for a computer, although, obviously, the computer does not "understand" anything in the human sense.)  Specifically, when one of multiple mappings has been confirmed, alternative interpretations of the inquirer's meaning can safely be ruled out, reducing the search space to only relevant items.  Consequently, irrelevant items will not be included in the search results presented to the inquirer.  Thus, the claims are directed to confirming an interpretation of a query, as represented by a mapping of query terms to item attributes—an abstract idea that has long been performed by humans.

Confirming a query's proper interpretation with the only person who could know for certain what it means (*i.e.*, the inquirer) is an abstract idea. It is also an everyday occurrence in human interactions. Thus, unlike the claims in *McRO*, which were directed to solving a technical problem associated with using computers to perform animation, the claims here are directed to understanding a query so as to provide relevant search results, and computers are merely employed as a tool. *See McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). The claims do no more than "implement an old practice in a new environment." *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) (*distinguishing McRO*); *Bilski v. Kappos*, 561 U.S. 593, 612 (2010) ("limiting an abstract idea to one field of use…d[oes] not make the concept patentable.").

Moreover, the claimed means for obtaining confirmation is simply to ask the inquirer whether he meant one category of things or another, not any sort of improvement upon computer functionality as Plaintiff claims. *See, e.g.*, '237 patent at Figure 2. This approach is not even arguably inventive. Indeed, the claims of the patents-in-suit fail to recite any inventive concept, as discussed below.

**B.**      *Alice* **Step 2 - The Claims Do Not Recite an Inventive Concept**

Given that the claims of the patents-in-suit are directed to an abstract idea, the Court must next determine whether the claims, considered individually and as an ordered combination, recite an inventive concept sufficient to transform the claims into patent-eligible subject matter. *Alice*, 134 S. Ct. at 2355. They do not.

Plaintiff's Response fails to clearly identify any inventive concept. *See Voxathon LLC v. Alpine Elecs. Of Am., Inc.*, No. 2:15-cv-562-JRG, 2016 WL 260350, at * 4 (E.D. Tex. Jan. 21, 2016) ("Since the proving of a negative is historically disfavored, once Defendants make a *prima*

*facie* showing that an inventive concept is absent, it falls upon [Plaintiff] to show that there is, in fact, an inventive concept actually present."). Instead, Plaintiff's argument, in this regard, appears to be that the claimed subject matter is patent-eligible under § 101 simply because the claims recite 13 or more steps. However, none of the steps that Plaintiff addresses, either individually or as an ordered combination, provide an inventive concept. Rather, each of the steps recites conventional, computer activity or an act that can be, and routinely is, performed in the human mind. *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014) ("[N]ot only can these steps be carried out in existing computers long in use, but they also can be done mentally.") (internal citation omitted).

As previously discussed, the central focus of the claims is on mapping query terms to item attributes and then obtaining confirmation of one such mapping by asking the user which of several categories of things he had in mind. No part of this focus is inventive.

The patents-in-suit admit that human beings, whether they realize it or not, routinely perform the claimed mapping of search terms to attributes in their minds. The common specification explains that, when asked about a "1997 Mustang red convertible," for example, a person will understand that the inquirer is asking about an automobile (and not a wild horse or P-51 fighter plane) because "***a human would infer a mapping of the keywords to attributes***" of particular automobiles ("Mustang" is a model name, "1997"—a model year, "red"—an exterior color, and "convertible"—a body style). '237 patent at 2:6-14 (emphasis added). Because, as even the patents-in-suit admit, this step can be, and routinely is, performed in the human mind, it cannot provide an inventive concept.

Next, the claims recite scoring the mappings to determine which category(ies) to present to the inquirer for confirmation. The patents-in-suit admit that no particular method of scoring is required:

> In another embodiment of this operation, one of many scoring algorithms is selected on the basis of the profile (*e.g.*, record in database 240) of a returning buyer…

'237 patent at 3:50-52; *cf. McRO*, 837 F.3d at 1313 (finding patentable claims "limited to rules with certain common characteristics, *i.e.*, a genus"). Indeed, one of the example scoring methods is simply counting the number of times each search term appears in the attributes of items in a given category and subtracting any matching user-excluded terms (*e.g.*, "NOT horse"). Whether by this or another scoring mechanism, human beings must also score their mental mappings in order to identify plausible interpretations. This process is performed instantaneously in a person's mind, but can also be reduced to paper, as the following table illustrates:

| | Does the term appear in attributes of a particular … | | |
|---|---|---|---|
| search term | automobile? | airplane? | animal? |
| "1997" | yes | yes | no |
| "Mustang" | yes | yes | yes |
| "red" | yes | yes | yes |
| "convertible" | yes | no | no |
| tally of matches | 4 | 3 | 2 |
| category score | 1.0 | 0.75 | 0.5 |

As with the mapping step, the scoring step can be, and routinely is, performed in the human mind and therefore cannot provide an inventive concept.

The next step is to confirm one interpretation of the query, as reflected in a mapping of query terms to item attributes. To achieve this, "[t]he highest scoring hierarchical category

descriptions are presented to the buyer [who] selects the best match . . . as compared to the entity the buyer seeks." '237 patent at 3:62-66; *see also* at Figure 2.  In other words, the patents claim asking the inquirer which of the most probable categories of things the inquirer meant.  For instance, "apple," the fruit, or "Apple" computers?  This step is not inventive because it simply describes how human beings typically confirm their mental mappings.  *Rothschild Location Techs. LLC v. Geotab USA, Inc.*, No. 6:15-CV-682-RWS-JDL, 2016 WL 3584195, at * 3 (E.D. Tex. Jan. 4, 2016) ("courts may also draw on their judicial experience and common sense at the motion to dismiss stage to assess whether an invention or structural claim elements are conventional, routine, or well-known").

The remaining, incidental steps of the patents-in-suit likewise fail to provide an inventive concept.  Before mapping occurs, the claims recite storing entity descriptions[4] and category descriptions and receiving, from the user, a list of search terms.  "These processes are well-understood, routine, conventional data-gathering activities that do not make the claims patent eligible."  *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015).

After obtaining confirmation of a mapping, the claims recite following-up with the inquirer regarding specific attributes of items in the category-of-interest.  Human salespeople do this as well, as illustrated in Defendants' Motions to Dismiss by the example of a salesperson following-up with a shopper, who has confirmed an interest in sweaters, about the desired size, color, style, and brand.  Therefore, this step does not provide an inventive concept at least because it mirrors a longstanding commercial practice.  *See, e.g., Alice*, 134 S. Ct. at 2356.

---

[4] "Entity descriptions," much like descriptions of items stored in a human brain, are merely collections of values assigned to item attributes. '237 patent at claim 10 ("the entity description comprising at least one value assigned to each item attribute"); '237 patent at Fig. 6 (depicting an "entity description" (3:14) or "item description" (2:52)).

Finally, Plaintiff spends much time arguing that "the claims exist and apply only in the realm of computers and technology." Response at 15, 22-24. However, it is clear that claims directed to an abstract idea are not rendered patent eligible by "merely requir[ing] generic computer implementation." *Alice*, 134 S. Ct. at 2357. Rather, "[t]o salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). Here, the claims merely employ computers as tools for carrying out the abstract idea.

Plaintiff cites to several cases for the proposition that the Asserted Claims are directed to an improvement of computers as tools. These cases are inapposite and readily distinguishable. Plaintiff points to *Motio, Inc. v. BSP Software LLC*, for the position that the patents-in-suit are directed to an improvement on existing computer-aided search technology. 154 F. Supp. 3d 434 (E.D. Tex. 2016); Response at 23-24. In *Motio*, the court found that while the claims were directed to an abstract idea, "the provision of [an] automated agent to solve the problem of a business intelligence system lacking native version control [] amounts to significantly more than a patent on the idea of maintaining versions of electronic documents itself. *Motio*, 154 F. Supp. 3d at 439-40. Plaintiff also points to *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001 (Fed. Cir. 2017), and *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017) for the same proposition that an improvement upon computer functionality is patent-eligible. However, unlike the addition of an automated agent in *Motio*, the static price index in *Trading Techs.*, and the memory system with programmable operational characteristics *Visual Memory*, here, the patents-in-suit do not contain any improvement of computer functionality and add nothing to the abstract idea to which they are directed.

Likewise, Plaintiff's reliance on *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, is readily distinguishable. 841 F.3d 1288 (Fed. Cir. 2016). In *Amdocs*, the court found that the claims were patent-eligible because the "claim's enhancing limitation necessarily requires that [] generic components operate in an unconventional manner to achieve an improvement in computer functionality." *Id.* at 1300-01. Similarly, in *Thales Visionix Inc. v. United States*, 850 F.3d 1343 (Fed. Cir. 2017), claims reciting a unique configuration of inertial sensors were patent-eligible. Here, however, mapping query terms to item attributes and then obtaining confirmation of one such mapping by asking the user which of several categories of things he had in mind, is in no way unconventional or an improvement in computer functionality.

Plaintiff heavily relies on *Improved Search LLC v. AOL Inc.*, and even requests that the Court copy the opinion "virtually verbatim". 170 F. Supp. 3d 683 (D. Del. 2016); Response at 31. While the claims in *Improved Search* generally relate to the same field as the patents-in-suit, the similarities stop there. In *Improved Search*, the claims at issue provided steps of extracting content words from a query, performing dialectal standardization of the words, and translation. *Id.* at 694. All of these steps were performed by the claimed invention, without additional user input. For example, once a user selected terms in one language to search, the claimed invention would perform the steps of extracting certain content words, perform the dialectal standardization, and translate the words in order to return a search result. *Id.* Here, however, the patents-in-suit offer no such improvement on inquiries. As described above, the patents-in-suit merely map and score searches in a way that requires input by the inquirer to receive the desired result. As such, the patents-in-suit in no way perform in an unconventional way, nor do they claim any improvement in computer functionality.

In sum, "the focus of the claims is not on [improving] computers as tools, but on certain independently abstract ideas that use computers as tools," and thus, they are not patent-eligible. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

### C.     Preemption

Assessing the preemptive effect of a claim aids in conducting the *Alice* two-step analysis. *Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, 635 F. App'x 914, 918 (Fed. Cir. 2015). Importantly, "[w]hile preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015).

Contrary to Plaintiff's assertion, the claims at issue preempt a simple and basic goal of human communication and inquiry: how to improve a question being asked in order to increase the likelihood of obtaining the desired information. Rather than being directed to an inventive solution to a technical problem, the claims broadly preempt using a computer to ask an inquirer to confirm one interpretation of his query over others. Because the person asking the question is the only one who knows what he meant, the claims preempt the only certain means for confirming an interpretation of a query. The preemptive effect of the claims, therefore, is substantial.

Additionally, the claims do not require any specific mechanism for mapping or scoring. As described in the patents' common specification, mapping can simply be matching search terms to item attributes. '237 patent at 3:26-44. Further, unlike the rules in *McRO*, the scoring step of the claims at issue lacks any "specific structure…[that] would prevent broad preemption of all" scoring-based means of ranking item categories. *McRO*, 837 F.3d at 1315. The patents explicitly state that "one of many scoring algorithms [may be] selected." '237 patent at 3:50-51. Thus, the claims are "broad enough to cover all possible approaches" to scoring. *McRO*, 837 F.3d at 1315.

### D.    Post-*Alice* Issuance

Plaintiff attempts to suggest that, because the patents-in-suit issued after the *Alice* decision, their validity under § 101 cannot be impugned.  *See* Response at 1, 3.  "Contrary to plaintiff's argument, the fact that the PTO may have considered *Alice*-based guidelines before issuing the patents-in-suit does not *mandate* a finding that the patents are valid."  *MacroPoint, LLC v. FourKites, Inc.*, No. 1:15 CV 1002, 2015 WL 6870118, at *3 (N.D. Ohio Nov. 6, 2015) (finding patents invalid that were issued after USPTO guidance on *Alice*) (emphasis in original).

Accepting Plaintiff's argument would mean that a Court could never question the validity of any issued patent—even in an area like subject matter eligibility where the USPTO's guidelines to Examiners were historically inadequate.  The fault of Plaintiff's reasoning is illustrated by the fact that the USPTO had to provide guidance to its Examiners about subject-matter eligibility *three times* while the patents-in-suit were being prosecuted.  The prosecution histories of the patents do not reflect a reasoned discussion of subject matter eligibility, and as such, no deference to the Examiner's judgment is warranted on this issue.  *See Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1322 (Fed. Cir. 2005) ("a court is not bound by the PTO's actions and must make its own independent determination of patent validity").

### E.    The Dependent Claims Do Not Add Any Limitations That Transform The Claims Into Patent-Eligible Claims

Contrary to Plaintiff's assertions, and as detailed in Defendants' Motions to Dismiss, the dependent claims do not add any additional limitations to change the idea, to which their corresponding dependent claims as a whole, are directed.

Plaintiff claims that dependent claims 7 and 8 of the '497 patent, claims 7 and 8 of the '860 patent, and claims 7 and 8 of the '521 patent, add a limitation enough to make the claims patent-

eligible because of "their tie to a particular technology, HTML." Response at 40. Plaintiff further claims that this provides "an additional technical step that renders the methods even more technically efficient improvements over the prior art." *Id.* However, merely implementing the graphical user interface as an HTML page, is not inventive. In fact, that is the primary way in which content on the Internet has been provided since well before the patents-in-suit's priority date. *See Dow Jones & Co. v. Ablaise Ltd.,* 606 F.3d 1338, 1340 (Fed. Cir. 2010) ("It is undisputed that by May 15, 1995 … HTML was well known to persons of ordinary skill in the art of Web design."); *see also, Tele-Publishing, Inc. v. Facebook, Inc.,* No. 09-11686-DPW, 2017 WL 1959218, at *7, (D. Mass. May 11, 2017) ("The claims rely on generic technologies, such as web browsers, URLs, HTTP servers, and HTML pages, which are not sufficiently inventive, in and of themselves, to render the claims non-abstract.") (appeal filed, No. 17-2163). As such, the requirement that the graphical user interface be an HTML page does not provide an inventive concept, nor render the corresponding claims patent-eligible.

Similarly, claims 5 of the '497, '860 and '521 patents do not add any meaningful limitation to transform their corresponding claims into patent-eligible subject matter. These claims recite "wherein the mapping is performed to a lowest level of category descriptions below which no further levels of category descriptions are defined." However, merely mapping to a lowest level of category descriptions is not inventive because it is similar to something salespeople routinely do in their heads. Plaintiff's attempt to limit the claims to require a computer is not sufficient to provide an inventive concept. *See Alice*, 134 S. Ct. at 2358.

Lastly, claims 5 of the '497 and '860 patents, and claim 9 of the '521 patent, recite "presenting, on the client computer [screen], a browsing area displayed within the graphical user interface page, wherein the browsing area is accessible at least upon exit of the search by the user."

This limitation merely takes an everyday occurrence—making items available to a buyer for browsing—and adds "do it on a computer." *Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP,* 128 F. Supp. 3d 103, 115 (D.D.C. 2015) ("Searching and browsing are routine, conventional computer functions …").  As such, the mere performance of this step on a computer does not make it inventive.  *Alice*, 134 S. Ct. at 2358.

### F.      Claim Construction Is Not Necessary

When patent claims on their face are plainly directed to an abstract idea, it is proper to make a determination of patent validity under § 101 at the pleading stage without the necessity of claim construction.  *See, e.g., Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348-49 (Fed. Cir. 2015).  Plaintiff has not identified any terms that require construction before the Court can rule on eligibility.  Indeed, no plausible construction of the claims would bring them within the scope of patentable subject matter.  Thus, Defendants' Motions are ripe for decision.

### III.    PLAINTIFF'S IMPROPER, ADDITIONAL EVIDENCE DOES NOTHING TO SAVE THE PATENTS-IN-SUIT

Plaintiff cites no authority allowing it to unilaterally introduce "evidence" purportedly relating to Defendants' Rule 12(b)(6) Motions.  Moreover, this "evidence" was not relied on by Defendants in briefing their Rule 12(b)(6) motions.  The purpose of Rule 12(b)(6) (namely, early disposition) would be undermined if an opposing party could simply submit self-serving extrinsic materials and claim that the introduction of those materials necessitates denying a Rule 12(b)(6) motion.  Instead, the Court is free to, and should, rule on Defendants' Rule 12(b)(6) Motions without considering the materials with which Plaintiff tries to obfuscate the record.

### A.      Prior Art Sought To Be Added By Plaintiff

Plaintiff seeks to introduce prior art materials produced by the *Aldo* Defendants.  First and foremost, the proposed addition of these materials is untimely.  Prior art, by definition, is public

information deemed to be known by those of ordinary skill in the art, like co-inventor Richard Bridgeman claims to be. *See* Dkt. No. 66-13 (Declaration of Richard Bridgeman); *see e.g.*, *Rmail Limited v. Amazon.com, Inc.*, No. 2:10-cv-258-JRG, Dkt. No. 264, at 4 (E.D. Tex. Feb. 8, 2013) (denying plaintiff's motion for leave to serve supplemental infringement contentions based on prior art discovery at least in part because that "information [ ] was publicly available"). Indeed, in its Complaint, Plaintiff specifically added allegations regarding the purported problems and solutions in the prior art – prior art problems and solutions very similar to those Plaintiff describes in the prior art materials it now proposes to add. Thus, not only do these untimely prior art materials add nothing new, the materials were known, publicly available prior art that Plaintiff could have easily discussed–and it did–in its Complaint.

Further, aside from its public availability and late introduction, the prior art Plaintiff seeks to add is irrelevant to the issue here: whether the asserted patents are ineligible for patent protection. Whether the asserted patents are in the same field as prior art has no bearing on the § 101 analysis. Instead, because the solution as claimed in the asserted patents is an abstract idea, the patents themselves are ineligible for patent protection.

## B. The *Aldo* Defendants' Claim Construction Positions

Plaintiff asserts that the *Aldo* Defendants' claim construction arguments regarding the terms "category descriptions" and "entity descriptions" warrant the need for supplementation. Again, Plaintiff has already had the opportunity to make any and all arguments regarding the meaning of "category descriptions" and "entity descriptions" in its own patents and the impact of those meanings on the § 101 analysis—without the inappropriate and untimely introduction of additional "evidence". Defendants should not be prejudiced by Plaintiff's failure to do so. Further, while Plaintiff now argues that Defendants tie these claim terms to "computer records," and thus,

the claims are limited to computer technology, Plaintiff has already alleged in its Complaint that the asserted patents are limited to the computer domain.

### C.  Mr. Bridgeman's Declaration

The Court should reject Plaintiff's attempt to add a declaration from co-inventor Richard Bridgeman to purportedly provide pertinent information on several issues relevant to the subject matter eligibility issues raised by the motions.  As an initial matter, the proposed declaration should be afforded little weight because it is directed to legal conclusions.  The value of the proposed declaration is further diminished by Mr. Bridgeman's unquestionable bias.  Mr. Bridgeman, in addition to being a co-inventor on the asserted patents, is (i) a registered patent agent who assisted with the prosecution of the asserted patents and (ii) "a stakeholder and officer of a closely-held corporation that holds membership interests in Semantic Search."  *See* Dkt. No. 66-13, at ¶¶ 4, 7-9.  He is biased toward maintaining his patents and stands to financially lose or gain depending on the outcome of this case.  As such, Mr. Bridgeman's declaration should be afforded no weight given his clear bias.

### D.  U.S. Patent No. 9,639,878

Lastly, the Court should deny Plaintiff's attempt to introduce an unasserted patent, U.S. Patent No. 9,639,878 (the "'878 patent"), into the record and have that serve as some basis to deny Defendants' Rule 12(b)(6) Motions.  The '878 patent has ***never been asserted against Defendants*** and is not relevant to Defendants' Rule 12(b)(6) Motions.  Moreover, the purported argument that Plaintiff tries to make with the '878 patent–*i.e.*, that the USPTO issued the patent after *Alice*–has already been made by Plaintiff with respect to its asserted patents.  And further, news of the '878 patent is not new.  The notice of allowance on the patent application that issued as the '878 patent was mailed on December 29, 2016—nearly four (4) months ***before*** Plaintiff filed its lawsuit.  Thus,

again, the '878 patent, like the other materials Plaintiff seeks to introduce, is irrelevant, late, and nothing new for the Court to consider.

## IV.    CONCLUSION

The Asserted Claims in this case fall squarely within the Supreme Court's definition of patent-ineligible subject matter.  For all the above reasons, Defendants respectfully request that this Court dismiss Plaintiff's Complaint in its entirety, with prejudice, for failure to state a claim upon which relief may be granted.  Defendants further request that the Court exclude the irrelevant, late, and improper "evidence" Plaintiff seeks to introduce in its Response.

Respectfully submitted,

/s/ *Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
J. Randy Roeser
Texas Bar No. 24089377
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: rroeser@haltomdoan.com

**ATTORNEY FOR DEFENDANTS
YAHOO! INC. and
SPORTSGIANT LLC d/b/a
HOCKEYGIANT.COM**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this 3rd day of November, 2017.

/s/ *Jennifer H. Doan*
Jennifer H. Doan