# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **SEMANTIC SEARCH TECHNOLOGIES LLC,** | Case No. 6:17-cv-00169-RWS |
| Plaintiff, | **PATENT CASE** |
| v. | **JURY TRIAL DEMANDED** |
| **YAHOO! INC.,** *et al.*, | |
| Defendants. | |

**PLAINTIFF SEMANTIC SEARCH'S SUR-REPLY BRIEF IN
OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTIONS TO DISMISS**

Plaintiff Semantic Search Technologies LLC ("Plaintiff" or "Semantic Search") files this Sur-Reply Brief in Opposition to the Rule 12(b)(6) Motions to Dismiss filed in the above-captioned case by Defendants Yahoo! Inc., and SportsGiant LLC d/b/a HockeyGiant.com ("Yahoo," "SportsGiant," and together, the "Defendants"), and in support thereof shows the Court as follows:

## INTRODUCTION

In its original response brief, Semantic Search demonstrated that the claims of the Patents-in-Suit are not abstract, they contain inventive concepts, and they do not preempt the field of searching for and retrieving information. Rather, as Semantic Search summarized in 10 key points of its Response Brief (*see* Response Brief, Dkt. No. 66, at pp. 2-3), the claims at issue are specific, technical, computerized solutions to problems that are particular to computer networks and the Internet and do not exist outside of that realm. Nothing in the Defendants' Reply Brief changes any of that.

The Defendants continue to ignore the specification and the specific limitations of the claims, and they have no real retort to the powerful documentary evidence submitted by Semantic

Search showing that top computer scientists, academic researchers, and commercial entities were assiduously working to solve the demonstrably non-abstract problem of how to reliably match users of products to desired records in a large search database corpus. Instead, the Defendants simply ask the Court to stick its head in the sand and ignore this compelling evidence. Similarly, the Defendants ask the Court to ignore the powerful declaration testimony of Richard Bridgeman without citing a single case that this evidence would be inadmissible (because, of course, supported, non-conclusory declaration testimony is indeed fully admissible under these circumstances).

Semantic Search conclusively showed in its original Response Brief that the claims of the Patents-in-Suit are subject matter eligible, as the USPTO found on multiple occasions under now-controlling law. The Defendants' motions to dismiss should be denied.

**ARGUMENT AND AUTHORITIES**

As Semantic Search covered most of the points raised in the Defendants' Reply Brief (Dkt. No. 68) in its original Response, this Sur-Reply will focus solely on a few rifle-shot matters from the Reply:

● On page 1 of the Defendants' Reply Brief, the Defendants characterize the claims as "nothing more than confirming an interpretation of someone's question." Without beating a dead horse, Semantic Search has thoroughly demonstrated in its Response that this is an incorrect characterization that does not reflect the true nature or the claims or the solutions they describe. *See, e.g.*, Response Brief at pp. 16-24. Likewise, the Defendants never explain why, if the claims were indeed such a simple abstract idea, many computer scientists, academic researchers, and commercial entities (as well as the inventors of the Patents-in-Suit) were working so hard to develop specific methodologies and solutions to solving this decidedly problematic issue in the

field of computerized search and retrieval. *See, e.g.*, Response Brief at pp. 32-38 and the corresponding evidence.

- Also on page 1, the Defendants mis-state that "[t]he parties agree that the Asserted Claims of the patents-in-suit are directed to confirming an interpretation of a query[.]" This is incorrect – Semantic Search certainly does not agree that the claims of the patents-in-suit are "directed to" this broad issue. Again, without being overly repetitive, Semantic Search has demonstrated that the claims are specific methods that solve a problem existing solely in the realm of computer networks and databases, that they do so in a non-conventional way, and that they improve the functioning of the computers.

- On page 2, the Defendants contend that Semantic Search attempts to "improperly introduce evidence outside the pleadings." The Defendants, however, do not offer a single case in support of this proposition; whereas Semantic Search relies on Fed. R. Civ. P. 12(d) and cited that rule as well as an exemplary 5th Circuit case confirming that evidence pertinent to the motion may indeed be considered.

- The Defendants make an interesting admission at page 3 of their Reply Brief – "the computer does not 'understand' anything in the human sense." This statement fully supports Semantic Search's position and illustrates why the Defendants' oversimplification is wrong. The fact that computers do not "understand" user queries in the human sense is exactly why the claims of the patents-in-suit are technical solutions and do not merely reflect human activity.

- On page 4 of their Reply Brief, the Defendants mistakenly state that Semantic Search's Response "fails to clearly identify any inventive concept." This is incorrect. The Defendants apparently overlooked pages 27-29 of Semantic Search's Response Brief and paragraphs 22-24 of the Bridgeman Declaration. Among other things, Mr. Bridgeman testified

that "the state of the art at the time of the invention failed to propose computer search solutions that confirmed user semantics pertaining to sought-after items, where the technique for confirmation includes iterative presentation of item attributes that are drawn from items in a category of products that had been previously identified through lexical search applied to category descriptions and then confirmed by the user." *See* Response Brief at p. 28; Bridgeman Declaration at ¶ 23.[1]

● On page 5 of their Reply Brief, the Defendants mischaracterize Semantic Search's arguments about the claims reciting 13 or more steps. This is incorrect. The purpose of Semantic Search's extended analysis of the steps of Claim 10 of the '237 Patent (*see* Response Brief at pp. 18-22), was to show an example of the detail and specificity of the methods of the patent claims – that is, that the claims do <u>not</u> merely say, "search for an item on a computer by asking a user what he or she wants." Moreover, this analysis helps to place the claims of the patents-in-suit in contrast to the various methods of the prior art and the potential solutions that were being put forth by other computer scientists, academic researchers, and commercial entities of the day.

● Also on page 5 of the Reply Brief, the Defendants argue that the patents-in-suit must be subject matter ineligible because the claimed mapping step can be performed in the human mind. If this were true and actually the rule of law, then *ipso facto* **all** patents related to artificial intelligence, for instance, would be *per se* subject matter ineligible. All patents related to search technology would also be *per se* ineligible. And perhaps all software patents would be *per se* subject matter ineligible because they could simply be performed (albeit more slowly) in the

---

[1] It is overly simplistic and inaccurate to try to distill the inventive concepts of the claims into a "sound bite." Any such summary or "sound bite" characterization – including that provided by Mr. Bridgeman – necessarily omits some of the specific elements, limitations and requirements of the claims. But in any event, Defendants' assertion that Semantic Search has failed to articulate an "inventive concept" is incorrect.

4

human mind. This is not the law, as shown by the numerous Federal Circuit and District Court cases holding certain software patents to be subject matter eligible if they pass the *Alice/Mayo* test. Defendants' argument goes too far and is incorrect as a matter of law.

● On page 6 of the Reply Brief, the Defendants make attorney argument that "scoring" as described in the patents-in-suit must also be performed by humans. This makes no sense. As the specification describes, "scoring" as described in the patents-in-suit was part of an improved lexical search method to confirm mapping and correspondence to desired results. *See, e.g.*, 3:25-60. That is, "scoring" in terms of computer-aided search of large search databases was inventive, according to the specification. The Defendants are precluded from arguing otherwise. They have not shown that "scoring" in terms of computer-aided search was in the prior art. Moreover, there is absolutely no evidence that humans must "score their mental mappings in order to identify plausible interpretations." *See* Reply Brief at p. 6. To use an example from Fig. 2 of the specification, does a salesperson in a store really go through a process to quantitatively assess that when a customer says "blue sweater," there are 550 category matches to "Apparel.men.outerwear.sweater" and 1,282 category matches to "Apparel.women.outerwear.sweater"? Undoubtedly, the salesperson does not do this "scoring." This example illustrates the lengths to which the Defendants must stretch to try to make their "must be performed by a human" argument.

● At page 11 of the Reply Brief, the Defendants want to act as if the fact that all four patents-in-suit (and another patent in this family) issued post-*Alice* is of no moment whatsoever. Contrary to Defendants' characterization, Semantic Search did not argue that the patents-in-suit are *per se* immunized from challenge because they issued post-*Alice*. However, the patents-in-suit are entitled to a presumption of validity, and the accused infringer bears the burden of proving

invalidity by clear and convincing evidence. *See* 35 U.S.C. § 282; *Commil USA, LLC v. Cisco Sys.*, 135 S.Ct. 1920, 1929 (2015). When the Court assesses this issue and whether there is clear and convincing evidence of invalidity, context matters. A single patent issued in the late 1990's or early 2000's in the wake of the *State Street Bank* decision[2] should be evaluated differently, and with far less deference given intervening changes and evolution in the law, than a family of four (and now five) patents all issued post-*Alice*. The presumption of validity presumes that the USPTO acted properly and that the examiner knew what he or she was doing and acted in accordance with controlling law at the time. The fact that all of the patents-in-suit issued post-*Alice* means that the USPTO and its examiners acted with knowledge of currently-controlling law – and notably, the latest-issued Patent-in-Suit, the '521 Patent, issued in June 2016, after the USPTO had issued its most recent guidance in May 2016. The fact that the USPTO and its examiners did not see a subject matter eligibility problem with any of the patents-in-suit and issued those patents post-*Alice* matters, and it matters a lot. As Semantic Search has noted, for the Defendants win their motions, the USPTO would have had to be wrong, ***under currently-controlling law***, not once or twice, but ***four times post-Alice***.

- Finally, at pages 13-15 of their Reply Brief, the Defendants ask the Court to ignore the evidence submitted by Semantic Search. They have no rebuttal to the fact that Fed. R. Civ. P. 12(d) expressly permits evidence or that Rule 12(d) expressly instructs the Court that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." They do not cite a single case in support of their arguments that Semantic Search's evidence should

---

[2] *State Street Bank & Trust Co. v. Signature Fin. Group, Inc.*, 149 F.3d 1368 (Fed. Cir. 1998) (holding "business method" patents to be subject matter eligible).

be excluded or ignored.[3] Their arguments that Semantic Search's evidence is "untimely" make no sense, as Semantic Search timely filed its evidence along with its Response Brief. In addition, in its Response, Semantic Search thoroughly described why the evidence it submitted is pertinent to the motion and why it contains material facts. *See* Response Brief at pp. 32-39. The Defendants are just being purposefully obtuse about the evidence.

Specifically with respect to the Bridgeman Declaration, Mr. Bridgeman laid a proper foundation for all facts he discussed, he is qualified to render all opinions contained in his Declaration (and the Defendants do not challenge his qualifications), and his Declaration is not conclusory as everything stated therein is fully supported by the facts and the record. This is certainly not a "sham affidavit" that should be excluded, and the Defendants cite no case law to support exclusion. To the contrary, the Defendants seem to admit that Mr. Bridgeman's Declaration is just a matter of weight, stating that it "should be afforded little weight" and that it has "value" but simply "diminished" value. *See* Reply Brief at p. 15. Semantic Search strongly disagrees with those arguments, but the point is that on summary judgment the Court does not weigh the evidence; rather, all evidence presented by Semantic Search is to be believed, and all justifiable inferences are to be drawn in Semantic Search's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

---

[3] In fact, the majority of Defendants' Reply Brief is merely a copy-and-paste job from the Reply Brief filed by the Defendants in the *Aldo* case (Dkt. No. 29 in the *Aldo* case), and, more particularly in this section, from the *Aldo* Defendants' Opposition to Plaintiff's Motion for Leave (Dkt. No. 129 in the *Aldo* case). Because these Defendants copied (at times without thinking), they make some arguments that have literally no application here, like repeatedly arguing that Semantic Search's evidence was untimely even though it was filed with Semantic Search's Response Brief.

## CONCLUSION

For the reasons set forth herein and in its Response brief, Plaintiff Semantic Search respectfully requests that the Court deny the Motions to Dismiss in their entirety, find that all claims of all of the patents-in-suit, U.S. Patent Nos. 8,793,237, 8,880,497, 9,069,860, and 9,378,521, are subject matter eligible under 35 U.S.C. § 101, and grant Semantic Search such other and further relief to which it is entitled.

Dated: November 17, 2017

Respectfully submitted,

 */s/ Craig Tadlock*
Craig Tadlock
State Bar No. 00791766
TADLOCK LAW FIRM PLLC
2701 Dallas Parkway, Suite 360
Plano, Texas 75093
903-730-6789
craig@tadlocklawfirm.com

***Attorney for Plaintiff Semantic Search Technologies LLC***

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all parties who have appeared in this case on November 17, 2017, via the Court's CM/ECF system, pursuant to Local Rule CV-5(a)(3).

 */s/ Craig Tadlock*
Craig Tadlock